In re TOWNSEND et al.

In re AKIN et al.

(Supreme Court, Special Term, Putnam County. March 9, 1912.)

1. ELECTIONS (§ 121*)—PARTY COMMITTEES—REMOVAL OF COUNTY COMMITTEE—POWER OF STATE COMMITTEE.

The Democratic state committee had no power to substitute a new county committee in place of the regular committee selected by the county convention, merely because the county convention which selected the regular county committee, by a deal with the Republican party or with the Republican candidates, failed to choose a Democratic candidate for the assembly, even though some of the regular committee were leaders in the county convention, since, under the primary law (Consol. Laws 1909, c. 22), the state committee has no power to discipline or remove members of a county committee.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 121.*]

2. ELECTIONS (§ 135*)—COUNTY COMMITTEES—LEGALITY—PERSONS ENTITLED TO QUESTION.

A purported Democratic county committee, which had no legal existence, could not question the legality of a meeting of the regularly appointed county committee at which designations of party candidates were made.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 135.*]

3. ELECTIONS (§ 135*)—PARTY COMMITTEES—NOTICE OF MEETINGS—RIGHT TO RECEIVE NOTICE.

Four members of the regular county committee of the Democratic party, who voluntarily withdrew and associated themselves with another committee which had no legal existence, but which attempted to usurp the powers of the regular committee, could not complain of not having received notice of a meeting of the regular committee at which designations were made of party candidates.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 135.*]

4. ELECTIONS (§ 135*)—PARTY COMMITTEES—NOTICE OF MEETING—FAILURE TO GIVE NOTICE—EFFECT.

Where 9 of the 13 members of a Democratic county committee had notice of a meeting of the committee to designate candidates for party nominations, and 8 of them attended the meeting, the fact that 4 of them did not receive notice was merely an irregularity which would not, under the primary law (Consol. Laws 1909, c. 22), vitiate the proceedings at the meeting.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 135.*]

Application by Asbury C. Townsend, as Chairman of the Democratic County Committee of Putnam County, for an order directing the Custodian of the Primary Records to file certain designations of candidates; and application by Charles E. Akin and another for an order directing the Custodian of Primary Records to strike from his record certain designations of candidates. First order applied for granted, and second order denied.

I. J. Beaudrias, for petitioners Akin and others.
Clayton Ryder, for petitioners Townsend and others.

TOMPKINS, J. These two proceedings, which were argued and submitted together, present but a single question, namely: Which of

two bodies claiming to be the Democratic county committee of Putnam county is entitled to recognition as such, and whose designations of candidates for delegates to the Democratic state convention and members of the judiciary committee, and members of the congressional, senatorial, and county committees are entitled to the use of the first column of the official primary ballot for the Democratic party under the party emblem?   It was agreed on the argument that all technicalities should be waived, and that both certificates of designations · should be regarded as filed with the custodian of the primary records, · and that the court should determine upon this application which of the two bodies claiming to be the county committee is the regular Democratic county committee of said county.

The conceded facts are that at the regular Democratic county convention held in and for the county of Putnam on the 23d day of September, 1911, Asbury C. Townsend and 12 others were regularly chosen as the members of the county committee, and thereafter duly organized as such county committee, with the said Asbury C. Townsend as chairman, and, since said organization, the said committee has met from time to time and at all times acted as such county committee.   The Democratic county convention, at which the members of this county committee were chosen, failed to nominate a Democratic candidate for member of assembly, and thereafter informal charges were made against said county committee to the Democratic state committee, accusing said county convention of treachery and disloyalty to ·the Democratic party of the state in failing to nominate a Democratic candidate for member of assembly, and such proceedings were thereupon had by said state committee that in the month of October, 1911, the following resolutions were adopted by said state committee:

"Resolved that we condemn and repudiate the action of the Democrats of Putnam county, who to secure, as they say, the election of members of the board of supervisors of that county, have entered into an agreement whereby they refused to nominate a Democratic candidate for assembly from that district.   After years of effort such alliances have been broken in every other section of the state and we cannot too strongly protest against and denounce such methods.

"Resolved that the chairman of this committee appoint a committee of five to · take the necessary steps to reorganize the county committee of Putnam county on a Democratic basis."

It will be observed that this resolution makes no charge against the said county committee, but accuses and condemns the action of the Democrats of Putnam county.   Thereafter the committee of five appointed by the chairman of the state committee visited the county of Putnam, and appointed a committee of twelve to perform the duties of the Democratic county committee of Putnam county. That committee organized and undertook to usurp the powers and functions and perform the duties of the regularly chosen county committee, of which Mr. Townsend is the chairman; and this committee, appointed by the state committee, and called .in this proceeding the "provisional committee," now claims to be the regular county committee, and to have the power to make designations of candidates for delegates to the state and other conventions and for members of

the county committee under the primary law (Consol. Laws 1909, c. 22).

[1] Upon the facts presented by the papers in this proceeding, there is not the slightest justification in law for the attempt of the Democratic state committee to substitute the so-called provisional committee for the regularly elected county committee; in fact, the state committee had no power so to do under any law, usage, or custom. The only charge apparently made against the regularly elected county committee was that the county convention had, pursuant to some deal or bargain with the Republican party or some Republican candidate or candidates, refrained from naming a Democratic candidate for member of assembly. But that complaint is made, and must be against the Democratic county convention, and not against the Democratic county committee, which was not in existence at the time the Democratic county convention met, and failed to nominate a candidate for member of assembly. This present county committee was chosen by the very convention whose conduct is condemned by the Democratic state committee for its failure to nominate a member of assembly, but was not organized, and had no legal existence until after the county convention adjourned. It was suggested on the argument of this motion that some of the members of the present county committee were parties to and leaders in the treachery and disloyalty of the county convention; but it certainly cannot be seriously argued that the county committee can be destroyed, or have its powers taken from it, because of the conduct of some of its members prior to its existence as a committee. It must be assumed that the county convention which chose this county committee knew the character and qualifications of the men it was choosing. Under the present primary law, the state committee has no power whatever over the county committee, and no jurisdiction to review its actions, or criticise its conduct, or discipline its members, and I doubt if, under the old law or the political usages and customs of the Democratic party, the state committee could go into any county and discipline or remove from office a county committeeman, or substitute for an existing and regularly elected and properly organized county committee a committee of its own choosing. Certainly the state committee had no such power in the absence of good and sufficient cause, on the part of the county committee as a body, and not because of something that one or more individual members may have done before the committee was chosen or had organized.

There is not a word in the papers before me that even accuses the regularly appointed county committee as such of any improper conduct in respect to any political matter. There is not a suggestion even that this county committee failed in any respect to perform the duties that devolved upon it during the campaign of 1911 or at any time since. That they were regularly elected, and that the committee was properly organized, is not questioned by the provisional committee, and upon these facts it seems to me inconceivable that it can be even seriously claimed that the provisional committee, so called, has any right or power as a county committee, or any authority un-

der the primary law to make nominations or designations. It has no legal or political status whatever as a county committee and never has had.

The claim is made on behalf of the provisional committee that the meeting of the regular county committee on the 4th of March, 1912, at which designations of candidates for party nominations were made, was held without due notice to all of the members of the said county committee. Proper notice, under the primary law, was given to 9 of the 13 members. No notice was given to the other 4 members, for the reason that they were appointed on the so-called provisional committee, and had accepted places on that committee, and acted with it.

[2] In the first place, the provisional committee, so called, has no legal existence, and no rights or powers under the law, and is in no position to question the legality of the meeting of the county committee at which designations were made.

[3] In the second place, these four members had voluntarily withdrawn from the county committee, and associated themselves with, and became members of, the so-called provisional committee, and had worked with it and in antagonism to the regular committee, and had received notice from the regular committee in January last that, unless within 10 days they resigned from the provisional committee or from the county committee, their places on the county committee would be deemed vacant. They all received notice of such action, and failed to resign or withdraw from the provisional committee. They were not, however, removed from the county committee upon charges, and after a trial as provided by the primary law. It may be that they are still members of the county committee; but I think, from the fact that they have failed to act with it, and have joined the provisional committee, and thereby attempted to usurp the functions of the county committee, they are hardly in a position to complain of not having had notice of the recent meeting.

[4] Besides, I think the failure to give notice, under the primary law, to these four members is an informality which may be overlooked, in view of the fact that nine members had notice, and that eight, and more than a quorum, attended the meeting which in all other respects was regular, and at which meeting the designations in question were made, in accordance with the primary law.

My conclusions are that the regular county committee of which Asbury C. Townsend is chairman have the sole right to make designations, and that such designations are entitled to be placed in the first column of the Democratic primary ballot under the party emblem.